214 So.2d 538

George SOULÉ et al.

v.

**Wade O. MARTIN, Jr., Secretary of State
and Pascal F. Calogero, Jr., J. D. DeBlieux
and Citizens for Hubert H. Humphrey, Inc.,
Intervenors.**

No. 49514.

Decree Oct. 3, 1968.

Reasons for Judgment Oct. 9, 1968.

Dissenting Opinion Oct. 10, 1968.

Leander H. Perez, New Orleans, for plaintiffs.

Jack P. F. Gremillion, Atty. Gen., Carroll Buck, Asst. Atty. Gen., Kenneth C. DeJean, Special Counsel, C. C. Wood, Baton Rouge, for defendant-appellee.

Landrieu, Calogero & Kronlage, Pascal F. Calogero, Jr., New Orleans, DeBlieux & Guidry, J. D. DeBlieux, Baton Rouge, Jack Rogers, Hardy M. Parkerson, Lake Charles, for Citizens for Hubert H. Humphrey, Inc. for intervenors and respondents.

HAMITER, Justice.

In conformity with the provisions of LRS 18:364, which require disposition of cases of this character within twenty-four hours after submission, and giving particular consideration to the exigencies of the matter as relates to time, we herewith hand down our decision—the reasons for which will follow in due course.

The writ of certiorari issued herein is made peremptory. It is now ordered, adjudged and decreed that the judgment of the district court be reversed and set aside; that the rule for a preliminary writ of injunction prayed for by plaintiffs be made absolute; and that, inasmuch as the Donkey is recognized as the National Democratic emblem, the Honorable Wade O. Martin, Jr., Secretary of the State of Louisiana, be and is hereby restrained, enjoined and prohibited from placing the Rooster (as the emblem of the National Democratic Party) at the head of the column, on the official ballot to be used in the general election on November 5, 1968, bearing the names of the National Democratic Party's candidates for President and Vice-President, as well as the names of the candidates for presidential electors nominated by resolution of the Democratic State Central Committee on September 12, 1968. Further, the demands of the intervenors are rejected.

Judgment.

HAMITER, Justice.

In this injunction proceeding ten independent candidates for election to the offices of Presidential Electors who support George C. Wallace for President of the United States seek to prevent the Secretary of State for the State of Louisiana, the Honorable Wade O. Martin, Jr., from placing the Rooster as the emblem, on the official election ballot (in the presidential election to be held on November 5, 1968), at the head of the column bearing the names of the National Democratic Party, of the National Democratic nominees, and of the candidates for Presidential Electors designated by a resolution of the Democratic State Central Committee which resolution was adopted September 12, 1968.

In connection with the prayer of their petition the plaintiffs initially obtained a temporary restraining order preventing the use of the Rooster over the names of the

Democratic nominees and the candidates for the electors.

Thereafter, J. D. DeBlieux and Pascal F. Calogero, Democratic candidates for the office of Presidential Electors, intervened in behalf of the Secretary of State, seeking a denial of the injunction.

Following a hearing on the rule for a preliminary injunction the trial court dissolved the temporary restraining order and recalled such rule.

At the instance of the plaintiffs we granted certiorari under our supervisory powers, this in view of the shortness of time remaining for the printing of the official ballots.

Prior to the submission of the case here the Citizens for Hubert H. Humphrey, Inc. also intervened in behalf of the Secretary of State, and it prayed for a denial of plaintiffs' demands.

In support of his announced intention, to place the Rooster at the head of the column containing the names of the National Democratic nominees and the candidates for the electors, the Secretary of State relies on a Resolution of the Democratic State Central Committee adopted on September 12, 1968. That resolution names the Democratic electors, pledges and requires that they support the presidential and vice-presidential candidates nominated at the Democratic National Convention, and further states: "BE IT FURTHER

RESOLVED that the said Presidential Electors shall appear on the official ballot in the forthcoming General Election under the name of the Democratic Party and *under the National emblem of the Democratic Party* in the same form and manner that the Democratic Party's electors were placed on the ballot in the 1964 National General Election." (Italics ours.)

It is contended by the plaintiffs, however, that the National emblem of the Democratic Party is the Donkey and not the Rooster, the latter being now and has been for many years the only emblem of the Democratic Party *in Louisiana*. Nevertheless, the defendant and intervenors point to the qualifying phrase (of the resolution) "in the same form and manner that the Democratic Party's electors were placed on the ballot in the 1964 General Election" as indicating the intention of the Committee to use the Rooster, inasmuch as the names of the National Democratic nominees and the electors appeared in the 1964 General Election in a column headed by the Rooster.

But for the mentioned qualifying phrase we would not even doubt that the National emblem of the Democratic Party (which, as we shall hereafter show, is the Donkey) was intended by the Committee. However, we think that the phrase referred to does render the meaning and intent of the resolution in its entirety somewhat uncertain and ambiguous.

Nevertheless, assuming arguendo that the State Central Committee intended that the Presidential electors appear under the Rooster, we think that such action is clearly violative of the provisions of LRS 18:671 which read: "A. All elections by the people, * * * shall be by official ballot, printed and distributed at the expense of the state. The ballots shall have printed thereon, and at the head and immediately preceding the list of names of the candidates of each political party or nominating paper, a specific and separate device by which the political party and candidates of the political party or nominating paper may be indicated. By stamping the device at the head of the list of the candidates of the political party or nominating paper, the voter may indicate that his vote is for that party's entire straight ticket. * * * *Provided that at a general election at which presidential electors are to be voted upon the ballot shall be so arranged as to indicate the name of the party, the national party emblem, the names of the candidates for president and vice president of the party, and the names of the candidates for the office of presidential elector.* The ballots shall be so arranged as to provide that a straight party lever or the stamping of a single emblem will automatically cast a vote for all electors of the political party favored by the voter. * * *

"B. The state central committee of each political party in this *state* shall select a *state party device* and certify it to the secretary of state. * * *" (Italics ours.)

■ In our opinion the italicized provisions in Subsection A are mandatory. They require that the names of the National Democratic candidates for president and vice-president and the Democratic electors appear *under the national emblem of that party*, the resolution of the State Central Committee to the contrary notwithstanding.

The defendant and the intervenors strenuously urge in this court, however, that there is no *national* emblem for the Democratic Party and that it is whatever emblem the several State Central Committees choose to select in the respective states.

■ We do not agree. The evidence in the record, aside from our own knowledge gleaned from observation over many years of the actions of the National Party in national conventions, convinces us beyond a shadow of a doubt that there *is a national party emblem* and that *it is the Donkey*. Our examination of the evidence introduced at the hearing in the district court, including publications of historians and political writers, shows that commencing some time in the early 1840's the Rooster began its ascendancy to recognition as the national emblem of the Democratic party. However, with the appearance about 1870 or shortly thereafter of the Democratic Donkey, designed by cartoonist Thomas

Nast, that animal by custom, usage and public acceptance superceded the Rooster as the national emblem of the party and it has remained so to the present time. We find not one bit of evidence in the record to show that there is no national emblem for the Democratic party or that it is not the Donkey.

This conclusion is not in any way contradicted by the affidavit of Dorothy V. Bush, the secretary of the Democratic National Committee, wherein she asserts that the *Committee* has never *adopted* the Donkey or anything else as a national emblem for the party, and that each individual state adopts its own emblem for the party. The affidavit does not show how long Miss Bush has been secretary for the Committee, or that such action was not taken by any former Committee. Likewise, it does not exclude the possibility that such step could have been taken by the party in national assembly.

■ But be that as it may, it is not essential, in our opinion, that the governing body or the National party itself *formally* adopt an emblem as its own in order that it achieve that status. Such status, we believe, can, and often is, accomplished by custom, usage and public acceptance, as was the case with the Donkey. Indeed, in one of the authorities cited by the defendant and intervenors it is shown that the Rooster *achieved its position about 1840* as a national emblem *by just such process.* Thus, in his booklet, "The Rooster", wherein he narrates the history to prominence of the Rooster, John Fowler Mitchell, Jr. states: "The Whigs had in their parades miniature log cabins and barrels of hard cider. Their battle cry of the 'Hard Cider and the Log Cabin' no doubt created a desire among *Indiana Democrats* for a similar cry. When the phrase 'Crow, Chapman, Crow!' was introduced they seized upon it and forthwith adopted the characteristic fowl; the Rooster, for *their* emblem. The Indiana press heralded the phrase and the new-born emblem to the four corners of the State. Gradually it grew in favor and importance, other newspapers in other states copied it, and in a comparatively short time *the Rooster was accepted and recognized as the National emblem of the great Democratic party."* (Italics ours)

Nor do we think that the telegrams sent to the Secretary of State from Lawrence F. O'Brien, Chairman of the Democratic National Committee, are in conflict with our conclusion. Those telegrams were in response to a query from the Secretary as to what the national emblem of the National Democratic Party is. And in them O'Brien does not state that there is no national emblem or that the national emblem is not the Donkey. To the contrary, he merely "requests", for the party, that the Rooster be placed on the ballot over the

electors pledged to the nominces of the National Democratic Party.

Moreover, tacit acknowledgement and recognition by the Legislature *of the existence of such a national emblem* is implicit in the very language of the above quoted proviso of LRS 18:671, subsec. A which was enacted as an amendment in 1954. Besides, that act, in addition to adding the proviso to Subsection A, also amended Subsection B which formerly had given the State Central Committee the authority to select the party device under which candidates would run. By the amendment to said Subsection B, the authority of the Committee was limited to the right to select only a *state* party device

In our opinion the enactment of the amendment (LRS 18:671, subsec. A) was for the express purpose of placing, in presidential elections, the nominees of the national parties and their electors under the respective *recognized national emblems of those parties* in furtherance of fairness of elections so as to indicate clearly to the electorate for which *national candidates* they were casting their votes regardless of how they chose to vote in the local contests.

Therefore, it is our conclusion that the provisions of LRS 18:671, subsec. A are mandatory, and that it is the ministerial duty of the Secretary of State to place the

name of the National Democratic Party, its nominees and electors, *under the national emblem of that party which is the Donkey.*

For convenience we repeat herewith the decree handed down by us in this matter on October 3, 1968, it being:

The writ of certiorari issued herein is made peremptory. It is now ordered, adjudged and decreed that the judgment of the district court be reversed and set aside; that the rule for a preliminary writ of injunction prayed for by plaintiffs be made absolute; and that, inasmuch as the Donkey is recognized as the National Democratic emblem, the Honorable Wade O. Martin, Jr.; Secretary of the State of Louisiana, be and is hereby restrained, enjoined and prohibited from placing the Rooster (as the emblem of the National Democratic Party) at the head of the column, on the official ballot to be used in the general election on November 5, 1968, bearing the names of the National Democratic Party's candidates for President and Vice-President, as well as the names of the candidates for presidential electors nominated by resolution of the Democratic State Central Committee on September 12, 1968. Further, the demands of the intervenors are rejected.

BARHAM, Justice (dissenting).

The issue in this case is controlled by Article 8, Section 15, of the Louisiana

Constitution, and any statutory law must be given a construction not repugnant to that provision. It states:

"All elections by the people * * * shall be by official ballot * * *; and such ballots shall have printed thereon, and at the head and immediately preceding the list of names of the candidates of each political party or nominating paper, a specific and separate device *adopted by such political party* by which the political party and the candidates of such political party or nominating paper may be indicated. * * *"
(Emphasis here and elsewhere is mine.)

In addition to the mention of a device in this constitutional provision, our statutory law makes several references to the selection of an emblem or device for use on ballots to designate the political parties in elections. See, for example, LSA–R.S. 18:622, 623, 671. In all but one instance the references to selection of party emblems or devices are qualified by the statement that the selection of the emblem or device must be made by the state central committee of the political party or in the nominating papers. The majority has based its conclusion upon one sentence of one statute in which these qualifying words are omitted. This statute, LSA–R.S. 18:671, is contained in the sub-part titled "Form of Ballot". The words "* * the ballot *shall be* so *arranged* as to indicate [1] the name of the party, [2] the national party emblem, [3] the names of the candidates for president and vice president of the party, and [4] the names of the candidates for the office of presidential elector" mean no more and no less than the italicized verb dictates: They are a mandate to the Secretary of State for the order or arrangement or form in preparing the election ballot. They cannot be construed so as to control the selection of the emblem for a political party when there is positive law for this purpose in other statutes and in the Constitution.

Article 1, Section 2, and Article 2, Section 1, of the United States Constitution specifically leave to the states the election processes for all elective positions in the United States and its political subdivisions. No amendment or court decision has changed this basic concept. Just as there are no national elections but only elections in the several states of this Union, for the purpose of participating in elections there are no national parties but only state parties operating under legislative authority in the several states. Therefore, since national political parties do not exist in the election machinery of the State of Louisiana, and since the only political parties in our state are those recognized and regulated by Louisiana law, any constitutional or statutory mention of "political parties" must necessarily refer only to *state* political parties.

Our law clearly provides that the state central committee of each political party shall select the party emblem or device. Obviously the Democratic State Central Committee has attempted to choose the Rooster, which is the traditional emblem of the Democratic party in the State of Louisiana, as the emblem or device to be arranged above the names of the electors for the Democratic nominees for President and Vice President.* The constitutional reference to "* * * a specific and sepa-

rate device *adopted by such political party*" requires this court to recognize the resolution of the Democratic State Central Committee.

Since the Democratic party through its state central committee has selected its emblem for the general election of November 5, 1968, this court should not interpose its judgment in this purely political matter where the proper agency has acted in compliance with constitutional and legislative authority. I therefore respectfully dissent.

---

* The Rooster has been the emblem of the Democratic party in the State of Louisiana in every presidential election in this century except for that in 1948. It must be conceded that the voters of Louisiana recognize the Rooster as the emblem of the Democratic party in the elections for President as well as in other elections. It is of much interest to note that the Rooster is also the emblem of the Democratic party in several other states of this Union, and that in *elections* there is no uniform national emblem for that party.